Muchnicki, just the way it's done. Muchnicki. Yes. Okay. Thank you. All right. You're up. Okay. Well, thank you very much. I will, as I said, my name is Dennis Muchnicki. I represent the petitioner in this case. I will dispense with the review of facts because I know the court has studied it all. But I think the key focal point is pretty much what the real idea says, which is looking at these cases, the question is whether one central reason for the persecutor's actions toward the alien involves potential political persecution. Now, and in probably the most definitive interpretation of the one central reason doctrine is in the BIA's decision in the end, which lays out a three-point test. Mr. Muchnicki, before you get into that, and I'll ask the Justice Department the same thing, I've read that opinion. It is certainly a detailed opinion applicable factually to what we have before us. To what extent has that been endorsed by either this circuit or the Supreme Court, or for that matter, to what extent do you accept all that and you're just going to try to argue around it? Well, I don't feel I have to argue around it. I actually think it supports our case, but I am not aware of any decision of this court adopting the matter of NM per se as the law of this circuit. Well, whether they endorse it by name, just whether that's the same review approach that this court or the big court has taken, but proceed. I'm not trying to detour you on something you're not seeing as particularly relevant. Okay, thank you, Your Honor. I appreciate that. But I think a starting point, and I mentioned it on page 18 of my colleague in the Justice Department's brief, is the comment that this involved a single incident. It did not. If you read the facts, both in the Department's brief and in our own brief, it is a series of actions. First of all, there is the incident where the police chief or fire chief, whatever he is, is refusing to allow my client, the alien, Mr. Du, to reopen his shop. And Mr. Du argues with the fire chief, I think it is, and the fire chief says the critical words that your actions are disturbing the social order. Now, that phrase, that agreement on that statement was made by the fire chief is in both briefs. And now I would submit that this phrase, disturbing the social order, is a clear statement that there's a political challenge involved here. It's not about you're being greedy. It's about you're disturbing the social order. Now, right after he says that, the fire chief makes two phone calls and has a group of guys come in and smash up and police officers smash up Mr. Du's store. Okay, that's one thing. But then after that, Mr. Du files two separate appeals, one of which is to the Security Bureau. And it is after he files these complaints against the fire chief, that's when the arrests occur. So the arrests occur, not just for what happened in front of the store, but taking the action, which by the way is approved in matter of NM, taking action to file a written complaint against the police chief. And then at the end, when all of it, he's tortured and goes through his 80 hours, he was detained and all that. He is released with the instruction that he is no longer allowed to file any further complaints. This creates, if we take that factual scenario and we put it against the test created in NM, it is very clear that the respondent is entitled to asylum. Because NM says, first, an immigration judge may consider whether and to what extent the alien engaged in activities which could be perceived as expressions of anti-corruption beliefs. Well, the mere fact that the police chief clearly states, you're disturbing the social order. And by the way, it's interesting, neither the BIA nor the immigration judge ever discuss the one statement that is clearly attributed to the police chief. The police chief says this is disturbing the social order. And then next, an immigration judge should consider any direct or circumstantial evidence that the alleged persecutor was motivated by the aliens perceived actual anti-corruption beliefs. Well, again, we have, first of all, the declaration of the fire chief at the time of the dispute that he was disturbing the social order. Second of all, we have after he goes and files his two complaints, that's when he's arrested. And when he's released, he is released with instructions you are never allowed to file another complaint. Now, if you take that and you apply that under, so that the first two criteria of NM, support grant of asylum. The third factor, which is a discussion of whether there is a complaint to higher levels of government, it isn't suggested as whether that is just positive one way or the other, just that it's another thing to look at. Mr. Mashiki, I think you are making excellent points and the IJ and the BIA seems to me might have been well served by coming to the opposite conclusion, finding then conclusion. But the motive of the actors, it seems to me, is what we're looking at. And that is a finding of fact. And the BIA, despite the good evidence that you're talking about, found insufficient evidence that Dew was being retaliated against for his political opinion, as opposed to the general corruption of the people he was dealing with. The BIA also talked about, as the Supreme Court has said is a factor, that there is an anti-corruption campaign of limited effect, apparently in this location, nationwide. Seems to me all of that, are we talking about a fact finding? And if we are, just why does this opposite result, why is the opposite result compelled? Because the test on one center... Is it a fact finding? Is that what we're dealing with? It is fact finding and it also follows the application of law. Okay, let's deal with it as a fact finding first. Is the opposite result compelled, which would mean the overwhelming or the only or the something evidence accepting the credibility of your client compels the opposite result? Yes, it's compelled because the way that the judge reaches his conclusion is he never addresses the disclosure of the fire chief that you are disturbing the social order. The judge ignores it. I submit to you, if you look at that fact, you cannot reach another conclusion. The fact that it is undisputed in the record that the police chief accused my client of disturbing the social order, you cannot reach a conclusion, another conclusion. And remember, it's not what the that this is a challenge to the social order. And then you see, so not only does, like I said, the chief just has the store roughed up and knocked around, but then my client goes out and files two complaints against him and bam, he is immediately arrested. And again, that's one of the factors that the court, that the BIA says in matter of NAM, you look at is whether he makes allegations that could expose the corruption to others. And that's what he is doing, particularly his complaint to the security bureau. And then it's after that he is arrested and he's held and abused until he agrees never to file another complaint. I submit none of that is discussed by the judge. None of that is discussed by the BIA. Now, I agree that when you ignore the evidence, you could come to another conclusion, like the judge and BIA did, but not if you focus on those facts and you apply the logic of matter of NAM. No, you can only come to one conclusion, that one central reason, which is the legal standard, is that Mr. Boo's actions of attacking the corruption was disturbing the social order. And that is a political statement by the police chief. It can only be seen as a political statement. Let's face it, a disturbing the social order is an accusation. You're shaking up the whole structure of our time. On that piece, just helping me a little bit factually, to what extent is the evidence, if you're correct of how important that is, as an indication of motive, what is the evidence as to the role of that particular official in the retaliation? It seems rather clear that he is the one who calls the police to get the whole retaliation process started. And then Mr. Boo files complaints against the police chief. I think he's a fire chief. Whatever he is. Yeah. And then right after that, the police come out and arrest him. So I would say it's pivotal, but that whole process, instead, if you read the immigration judge, he's wandering around discussing everything but that. He's discussing whether Mr. Boo's wife should have written a letter and all this. He never focuses on the entire factual display. And I submit when you take out the complaint that you are and then you arrest him when he files complaints and then you tell him you better dismiss those complaints and never file them again, or we're not going to release you. I'm sorry. You cannot come to any conclusion other than what Mr. Boo did is one central reason, a legal test. And therefore, under the one central reason test and matter of NM, the way that it's set, matter of NM is structured, that you have to look at one of the possible reasons of the motivator, of the, excuse me, persecutor. The persecutor said it, you're disturbing the whole way we do business. And in fact, if you take matter of NM, you know, they say politics is a matter of organizing the government. That's what this police chief is saying. You're disrupting our whole social order. We're allowed to do this and you're going to try and stop it. I submit nobody, if you look at the facts, can come to the conclusion that Mr. Boo's fighting against corruption was not perceived as a political issue, it clearly was. And B, was it- Let me ask you, I mean, you certainly have a strong argument on what these facts are indicating. Matter of NM says the showing of retaliatory harm for exposing acts of corruption, coupled with evidence that the corruption is in some way linked to a political system or disturbing the social order, one might say, would appear insufficient to demonstrate that the victim's anti-corruption beliefs are a one central reason. That's one of the reasons, that line is one of the reasons I asked you for whether this has been endorsed by the Fifth Circuit. I mean, it really does seem extraordinarily limited. I mean, this fellow, if you accept his evidence, which we are, because the BIA did, regardless of credibility, say accepting his credibility, it's not enough. It does seem to me that an abuse from the political system of this fellow, so that their corruption could continue, looks like what these facts are. But Matter of NM says that's not really enough. Help me with that. Well, it says, you also have to get in the fact that if the persecutor is motivated to do it because of that, then it is enough. And that's what we have here. We have the sequence of facts is very clear. The motivation is the threat to the social order. And that is sufficient when we realize that's part of the motive. So that, and to the extent that somehow NM says that this clear, what I think is a very clear factual scenario, is it doesn't show political persecution for political opinion. I think Matter of NM is wrong. I don't think that reads that way. I think you read NM, the way it lists the three factors in the syllabus, and it actually supports the grant of asylum. Because as you interpret the way that NM says you are to look at the facts, the facts do show what I'm saying, which is this was a, my client was challenging the social order in China. And they got at him. And they, the only way he got out of got out alive is he had to admit he won't do it. I mean, so with that, I'm not sure I don't see the clock as to whether I have time left. Yeah, you just you got like 30 seconds, but you've reserved your you've reserved your full rebuttal time. So okay, I got 20 seconds, if you want. Well, I think I've made my point. And I would request a rest until my thought. Thank you very much. All right. Thank you, sir. We'll hear from Mr. Ross. Good morning, Your Honors. Jonathan Ross for the Attorney General, may it please the court. My I want to focus on my colleagues. One thing that my colleagues said in particular, that is unfortunately just wrong. And he said that it's not what the immigration judge thinks, but it's what the persecutor thinks. And it's very important, as Judge Southwick pointed out, in determining Officer Ma's actual motive is simply a factual finding. So it's explicitly the factual finding of the immigration judge as to what the motive is of the alleged persecutor. That is dispositive in this case. And although Mr. Dew paints a different perspective of the fact, he's not able to show that there that the finding of the agency compels reversal, where as he noted in Mr. Dew noted in his own testimony, that he had a successful business, and he made extortion payments, not just one, not just twice, but over years, he paid 10s of corrupt officials. And in terms of the immigration judge, considering this evidence of quote, disturbing the social order, aside from the issues of waiver and exhaustion that exists, because not only was that not preserved in the brief to the board, but it was not preserved in the brief to this court, other than merely stating it in the facts of this section. Matter of NM is very clear, which has been adopted by this court, neither party fights to it. I, just as a quick aside, this court has relied on matter of NM in the past in sealed petition or be sealed respondent. The case is not exactly on point here. However, it's 829 F3rd 379, 2016. And in that case, this court relies on NM extensively, but even if the matter is not waived, or even waiver and exhaustion issues aside, the fact that the police officer said that he was disturbing the social order, and that he could not file additional appeals isn't relevant where this entire scheme predated any of those things. Mr. Dew was making extortion payments far before anyone accused him of in fact, in his testimony, he said, excuse me, who would you say the evidence, if anyone is the person whose motive we're looking at, who is that person in these facts? Your honor, the court is looking to the immigration judges determination of Mr. Maz, Mr. Maz motive, which is a factual finding reviewed for clear air. The only thing I saw in the fall facts that would put somebody in a position of authority, whose motive might have been relevant authority in so far as these acts towards him would have been Mr. Ma. I want to make sure that there's not someone else that we need to be considering. Well, for full disclosure, and this is something that I don't think is a positive issue one way or another in this case, there is Mr. Dew never explicitly testifies that there's any link between officer Ma and the officers that ended up arresting him. I think it's fair to assume that there is some connection there. However, these are the same group of government officials that went to his store for years and took items at their leisure, forced him to pay tens of thousands of yuan, and that were merely trying to protect their criminal enterprise in matter of NM. Also, as your honor recognizes, corrupt officials who were motivated by desire to seek revenge or a desire to avoid exposure of a profitable scheme are not acting based on concerns over an applicant's political beliefs. They're acting on, and this is what the agency's finding here, a desire to keep the money flowing. And Mr. Dew was a willing participant. The fact that he paid so much money to them over so many years undermined his claim to opposing or even being viewed as opposing corruption. And also, Mr. Dew testified unambiguously that government officials sought money from everyone in his community. To use his exact words, not just me, but my colleagues, my friends, and my relatives. Hence, he was targeted because he could pay, he did pay, and presumably he would have continued to pay. The fact that Mr. Dew now puts forward another alternative perspective doesn't meet his burden to show that the agency's finding is not reasonable. In fact, it does just the opposite. Now, both parties have relied on matter of NM extensively. And again, matter of NM is clear-cut in saying that in determining a persecutor's actual motive, it's a factual finding. That's what the immigration judge did in this case. He considered the evidence as a whole, which rested primarily on Mr. Dew's testimony and also his affidavit, country reports as well, and came to a reasonable finding that his history of multiple payments, significant payments, to these corrupt officials way before he was arrested and way before he was told that he couldn't file additional appeals, that he was participating in this scheme. There's also, I'd like to note that my colleague said that there's no evidence that the, he seemed to allege that the immigration judge in this case, and perhaps the board as well, didn't consider all of the evidence. However, I think that there's a pretty thorough review of the evidence, and the immigration judge's decision goes into significant detail. But even so, there's a presumption that the immigration judge considered all of the evidence, and that's not true. Before him, whether or not he explicitly fights to it. And I'm happy to continue discussing why the agency's decision was reasonable under the circumstances, and specifically because of the years of payments Mr. Dew made before his actual arrest, and the fact that extortion was so widespread in his community that there was no nexus where everyone was being extorted, whether they were a business owner or not. But hearing no other questions from the panel, I'd like to reserve, or yield the rest of my time, barring any questions. Your bottom line is that, you know, this is all factual, maybe it could have come out a different way, but it didn't. And essentially, given the standard of review that we are governed by, the result is supported by the evidence. That's your takeaway, I guess. Yes, Judge Stewart. The government's position is that there are alternative perspectives in this case. And the board even acknowledged that, but that simply showed that the immigration judge's findings, in the end, were one reasonable takeaway from the evidence before him. The fact that there were so many payments that came significantly before any type of altercation, there just, it can't be shown that, it undermines Mr. Dew's argument that either he was at some point expressing a political opinion, or being perceived as opposing corruption, where you make these types of ongoing payments. And again, as the agency found, this was one possible, reasonable reading of the facts. And so, Judge Stewart, your synthesis of the government's argument is correct. Okay, thank you. Any other questions of Mr. Ross, by the panel? All right, thank you, Mr. Ross. Back to you. Back to you, counsel, for rebuttal. Mr. Ross has made my point. And it further illustrates that what was happening here was that he was disturbing the social order. That's right. There was rampant corruption. My client always went along with it previously. And that's the social order. And then he said, hell no, I'm not doing it anymore. And that's where they say, hey, you are disturbing the social order. You're throwing out the whole, you're trying to defy the whole system that we've learned. A colleague from the department is saying, underscores our claim. And it underscores the significance of that statement. You are disturbing the social order, because a social order with rampant corruption, you pay, you let these guys do whatever they want to you. And my client said, no, no. You argued passionately, but how can one statement take on so much orbit? Well, number one, it clearly did. And second, it wasn't just one statement. He then proceeds to file two appeals, including to the Security Bureau, challenging this. So it is not one statement. What it shows is my client showed his determination to follow up by filing these appeals. So this is a challenge to the social order. That is political. There is nothing in the record to support any other conclusion. And the only way you can reach the conclusion that the judge did is you don't consider the whole this declaration of the persecutor, that you're disturbing the social order, that you don't, in fact, you don't consider that there clearly was a system of corruption. And this is saying no. Mr. Dew said no more. And this does throw the whole system into chaos. And they had to put him down. And that's why they said, you know, you'll only be released if you agree you're never going to do this again. So in my view, if you look at the entire facts, as opposed to selectively the way the judge did, you cannot, you can only come to one conclusion. And that is that Mr. Dew's challenge to the corruption practices was, as the persecutor himself said, undisputed in the record, a challenge to the social order. And that, of course, is political. And therefore, there is a claim here for political persecution, because Mr. Dew was challenging the social order of China. And it should be remanded back for an evaluation of the credibility issues, which were never addressed by the board. But there is no possible other way of looking at it. Once you take in the description by the persecutor, that he was challenging, he was disturbing the social order of corruption. Thank you very much, and I hope you all have a pleasant day. Thank you. All right. Thank you, sir. Thank you to both counsel for a good briefing on this. It's, you know, a different set of facts, and you argued ably for your respective side. So we'll take the case under submission, and we'll get a decision out as soon as we can. With that, both of you are excused. Thank you. Thank you.